| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER - Bar No. 156593<br>RICHARD D. BURSTEIN - Bar No. 56661<br>JORGE A. GAITAN – Bar No. 288427<br>BRUTZKUS GUBNER<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: sgubner@bg.law<br>rburstein@bg.law<br>jgaitan@bg.law<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* David Seror, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re: | |
|---|---|
| ALLIANCE FUNDING GROUP, INC.,<br><br>Debtor(s). | CASE NO.: 1:17-BK-11888-MT<br>CHAPTER: 7<br><br>**NOTICE OF MOTION FOR:**<br>MOTION BY CHAPTER 7 TRUSTEE FOR ORDER AUTHORIZING SALE OF 1020 PROVIDENCIA AVE., BURBANK, CA PURSUANT TO 11 U.S.C. SECTION 363 (b) AND (f) AND OTHER RELATED RELIEF<br><br>(***Specify name of Motion***)<br><br>DATE: 06/05/2019<br>TIME: 10:00 am<br>COURTROOM: 302<br>PLACE: 21041 Burbank Blvd.<br>Woodland Hills, CA 91367 |

1. TO (*specify name*): ALEXANDER USMANOV AND NATALIA USMANOVA AND ALL INTERESTED PARTIES

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date: 05/15/2019

BRUTZKUS GUBNER
Printed name of law firm

/s/ Jorge A. Gaitan
Signature

Jorge A. Gaitan
Printed name of attorney

STEVEN T. GUBNER - Bar No. 156593
RICHARD D. BURSTEIN - Bar No. 56661
JORGE A. GAITAN – Bar No. 288427
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: sgubner@bg.law
rburstein@bg.law
jgaitan@bg.law

Attorneys for David Seror, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DISTRICT**

In re

ALLIANCE FUNDING GROUP, INC.,

Debtor.

Case No. 1:17-bk-11888-MT

Chapter 7

**MOTION BY CHAPTER 7 TRUSTEE TO: (1) APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES WITH SUCH LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVE OVERBID PROCEDURES; AND (3) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(m); DECLARATIONS OF DAVID SEROR AND STEVEN FLORES IN SUPPORT THEREOF**

**Property: 1020 Providencia Ave,
Burbank, CA**

**Hearing:**
Date: June 5, 2019
Time: 10:00 a.m.
Place: Courtroom 302
21041 Burbank Blvd.
Woodland Hills, CA 91367

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ....2
II. FACTUAL BACKGROUND ....3
  A. Debtor's Post-Petition Activities ....4
  B. The Quiet Title Action ....4
  C. Marketing of the Property and Employment of the Broker ....6
III. TERMS OF PROPOSED SALE ....6
  A. Purchase Agreement ....7
  B. Overbid Procedures ....8
IV. PROPOSED DISTRIBUTION OF SALE PROCEEDS ....9
V. DISCUSSION ....10
  A. Title to the Property is Fully Vested in the Debtor. ....10
  B. The Court Should Authorize the Sale of the Assets in Accordance with the Purchase Agreement. ....10
  C. The Court Should Authorize the Proposed Sale Free and Clear of All Liens, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f) ....12
  D. The Court Should Find the Buyers are Good Faith Purchasers ....13
  E. The Court Should Approve the Bidding Procedures ....14
VI. NOTICE ....15
VII. CONCLUSION ....15

# TABLE OF AUTHORITIES

Page

## CASES

In re Alves, 52 B.R. 353, 355 (Bankr. D.R.I. 1985) .......... 11

In re Financial News Network, Inc., 931 F.2d 217 (2d Cir. 1991) .......... 14

In re Gerwer, 898 F.2d 730, 733 (9th Cir. 1990) .......... 12

In re GGW Brands, *LLC*, 2013 WL 6906375, at *24 (Bankr. C.D. Cal. Nov. 15, 2013) .......... 12

In re Pine Coast Enterprises, Ltd., 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) .......... 13

In re Taylor, 198 B.R. 142, 162 (Bankr.D.S.C.1996) .......... 12

In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) .......... 11

In T.C. Investors, et al. v. Joseph, *et al*. (*In re M Capital Corp*.), 290 B.R. 743 (9th Cir. BAP 2003) .......... 14

Kham and Nate's Shoes No.2 v. First Bank, 908 F.2d 1351, 1355 (7th Cir. 1990) .......... 13

Matter of Phoenix Steel Corp., 82 B.R. 334, 335-356 (Bankr. D. Del 1987) .......... 11

## STATUTES

11 U.S.C. § 1112(a) .......... 4

11 U.S.C. § 303 .......... 12

11 U.S.C. § 363 .......... 10

11 U.S.C. § 363(b) .......... 1, 15

11 U.S.C. § 363(b)(1) .......... 2, 10

11 U.S.C. § 363(f) .......... 1, 2, 12, 13, 15

11 U.S.C. § 363(m) .......... 19

11 U.S.C. §§ 706(a) .......... 4

**RULES**

Federal Rules of Bankruptcy Procedure 2002(a)......15, 19

Local Bankruptcy Rule 6004-1(f)......15

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, ALEXANDER USMANOV AND NATALIA USMANOVA, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND ALL OTHER INTERESTED PARTIES:**

David Seror, Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate ("Estate") of Alliance Funding Group, Inc. ("Debtor"), hereby moves this Court for an order authorizing the sale ("Sale") of the Estate's interest in certain real property located at 1020 Providencia Ave, Burbank, CA (the "Property") to Petros Zargaryan and Kristine Shmavonyan (collectively, "Buyers"), on an "as-is" "where-is", and "with-all-faults" basis without any warranties, expressed or implied, and without any contingencies pursuant to 11 U.S.C. §§ 363(b)(1) and (f), free and clear of liens, interests, claims, and encumbrances, with such liens, interests, claims, and encumbrances to attach to the Sale proceeds, net of expenses of sale, with the same priority and rights of enforcement as previously existed.

The Trustee seeks Court approval to sell the Property to Buyers pursuant to the terms and conditions set forth in the Counter-Offer executed by the Buyers on March 2, 2019, the Amended Escrow Instructions dated March 29, 2019, reflecting a reduction in the purchase price to address Buyers' request for repairs to the Property (collectively, the "Purchase Agreement") attached as **Exhibit "A"** to the Declaration of David Seror ("Seror Decl.") and incorporated herein by this reference, subject to overbid, and requests that the Court determine that Buyers are entitled to a good faith determination pursuant to 11 U.S.C. § 363(m). In addition to the foregoing, the Trustee seeks Court approval of the bidding procedures as set forth herein. The Trustee further seeks Court approval to pay the brokers' commissions, normal and customary escrow closing costs, and the specified undisputed tax liens on the Property through escrow as set forth herein.

In support thereof, the Trustee represents as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Trustee proposes by this Motion to sell the Estate's interest in the Property to Buyers for the purchase price of One Million Three Hundred Forty-Five Thousand Dollars ($1,345,000.00) ("Purchase Price"). The Buyers have made an initial deposit of Forty Thousand Five Hundred

Dollars ($40,500.00) of the Purchase Price into A&A Escrow Services, Inc. ("Escrow). The balance of the Purchase Price will be paid by wire transfer upon the entry of the order approving this Motion, but no later than the first business day after 14 calendar days following the entry of the Court order and prior to closing of Escrow ("Closing").

The Trustee also seeks approval for the solicitation of overbids concerning the sale of the Property at the hearing on the Motion and the procedures for such solicitation. The Trustee requests that the Court find that the Buyers are good faith purchasers within the meaning of 11 U.S.C. § 363(m) and are entitled to the protections thereof.

The Property was listed at a listing price of One Million Two Hundred Ninety Five Thousand Dollars ($1,295,000.00). It was marketed on the Multiple Listing Services ("MLS") and was also promoted on the proprietary websites Zillow.com, Realtor.com, Redfin.com and ColdwellBanker.com.

The foregoing marketing efforts resulted in over 3,200 agent views of the Property on the MLS and 3,700 views on proprietary websites, not including Redfin. There were three offers received on the Property, including that of the Buyers. *See,* Declaration of Steve Flores ("Flores Decl.") attached hereto and incorporated herein by this reference.

The Trustee believes that the offer from the Buyers, based on all the factors previously described, represents an offer that is well within the range of reasonableness and neither the Broker nor the Trustee believe that further marketing will result in any substantial incremental benefit to the Estate. Moreover, the Broker shall publish the hearing information on the MLS, in addition to the overbid information set forth herein to encourage overbidding at the hearing. For these reasons, the Trustee submits that this proposed Sale is in the best interest of the Estate because the consideration for the Sale of the Property is reasonable, and the Estate will benefit as a result of the Sale. Based on the foregoing, it is respectfully submitted that the Sale proposed herein provides maximum benefit to the Estate.

## II. FACTUAL BACKGROUND

On or about July 17, 2017 ("Petition Date"), the Debtor filed a voluntary chapter 7 bankruptcy petition initiating this bankruptcy case ("Bankruptcy Case"). Thereafter, David Seror

was appointed as the Chapter 7 Trustee for the Estate, in which capacity he continues to serve. On October 7, 2017, Debtor amended its Petition [Docket No. 12] ("Amended Petition") and identified new assets on its Schedules A/B and identified new secured creditors on its Schedule D. Subsequently, on November 15, 2017, Debtor filed a Motion to Convert Case under 11 U.S.C. §§ 706(a) or 11 U.S.C. § 1112(a) [Docket No. 17] ("Motion to Convert"), which Trustee opposed. On December 15, 2017, the Court entered its order denying Debtor's request for conversion. [Docket No. 35].

**A. Debtor's Post-Petition Activities**

In connection with the litigation around the Motion to Convert, the Trustee learned that Debtor, via its principal Firooz Payan ("Payan"), had continued to operate its business, presumably extending additional loans and taking and/or giving additional or new security interests in collateral without the knowledge or approval of the Court or Trustee. *See, Trustee's Opposition to Motion to Convert* [Docket No. 22]. A copy of Firooz Payan's Declaration filed in connection with the Motion to Convert is attached to the Trustee's Declaration as **Exhibit "B"** ("Payan Decl."). According to Payan, as of April 1, 2014, Debtor held a secured note in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00), representing a loan to an individual named Hamlet Betsarghez ("Betsarghez Loan"). Payan Decl. at ¶ 4. The collateral securing the Betsarghez Loan was purportedly the Property. According to the Payan declaration, on November 7, 2017, post-petition, Payan caused the Debtor to foreclose on the Debtor's lien secured by a parcel of real property with the express purpose of avoiding a senior lender foreclosing on its own lien. *Id*. at ¶ 15.

**B. The Quiet Title Action**

In his investigation of the Property, the Trustee found numerous competing claims and legally questionable encumbrances recorded against the Property. Additionally, the post-petition foreclosure of the Property by Payan required the Trustee to seek a determination regarding the extent of the Estate's interest in the Property. Thus, on June 25, 2018, the Trustee initiated an adversary proceeding, Case No. 1:18-ap-01076-MT (the "Quiet Title Action"), for turnover, quiet title, and for declaratory relief against the following parties:

RAZMIK ASLANJAN a/k/a Razmik Aslanyin, an individual; HAMLET BETSARGHEZ, an individual; HELEN MINASSIAN, an individual; ALLEN MELIKIAN, an individual; KELLZI FAMILY TRUST, a trust of unknown type; ZAVEN KELLZI, trustee of the Kellzi Family Trust; SONIA KELLZI, trustee of the Kellzi Family Trust; ALEXANDER USMANOV, an individual; NATALIA USMANOVA, an individual; MKRTCHYAN INVESTMENTS, LP, a California limited partnership a/k/a MKRCHYAN INVESTMENTS, LP; GREG MKRCHYAN, general partner of Mkrtchyan Investments, LP a/k/a Mkrchyan Investments, LP; NEELAM J. SAVLA, an individual; PUJA J. SAVLA, an individual; ANJANA S. SURA, an individual; ARTHUR NAGAPETYAN, an individual; ROBERT ASKAR, an individual; EVA ASKAR, an individual; AMERICAN FUNDERS CORP., a Nevada corporation; FIROOZ PAYAN

(collectively, "Defendants"). On June 6, 2018, the Trustee filed his First Amended Complaint (the "FAC"). Specifically, the Trustee sought a declaratory judgment that the Property is property of the estate following the Debtor's post-petition foreclosure of its lien, for turnover of the Property, and to quiet title to the Property, as to all Defendants.[1] Since the filing of the FAC, default has been taken against 13 of the Defendants and stipulated judgments entered as to Robert and Eva Asker, and Razmik Aslanjan a/k/a Razmik Aslanyin. The only remaining litigation proceeding on the FAC consists of the Trustee's second and third claims for relief (to quiet title and for declaratory relief), as between Trustee and Alexander Usmanov and Natalia Usmanova (collectively, the "Usmanovs"). An order closing the adversary proceeding was entered on March 11, 2019. The Trustee's counsel contacted the Court's clerk to request that the order be vacated as a clerical error because the adversary proceeding remains unresolved as to the Usmanovs. On May 6, 2019, the Court entered an order reopening the Quiet Title Action.

By this Motion, the Trustee seeks Court approval to sell the Property free and clear of the interests that are the subject of the FAC, including the Usmanovs. Should the Court approve the Motion, the Trustee shall hold the net sale proceeds pending final resolution of the FAC. On final adjudication of the remaining interests, the Trustee shall pay any remaining valid liens or claims against the Property from the proceeds, in order of their priority.

/ / /

/ / /

---

[1] Firooz Payan was subsequently dismissed from the Complaint based on the filing of his own personal Chapter 7 petition on or about on February 21, 2018 styled *In re Firooz Payan*, case number 9:18-bk-10237-DS ("Payan Case").

**C. Marketing of the Property and Employment of the Broker**

After exploring the marketability on the Property, on or about February 14, 2019, the Trustee executed a listing agreement with the Broker ("Listing Agreement"), and on February 25, 2019, filed an application to employ the Broker to assist him with the marketing and sale of the Property; the Broker's employment was approved on March 26, 2019. [Docket No. 64] ("Employment Order"). A true and correct copy of the Listing Agreement is attached as **Exhibit "C"** to the Seror Decl.

The Broker determined the Property should be listed at One Million Two Hundred Ninety Five Thousand Dollars ($1,295,000.00), which value was then set in the Listing Agreement. Flores Decl.

As set forth in the Preliminary Title Report attached as **Exhibit "D"** to the Seror Decl. and incorporated herein by this reference ("Title Report"), title to the Property stands in the name of the Debtor.

The Trustee does not dispute the following liens identified on the Title Report (collectively "Property Taxes"), except as otherwise noted, and proposes that they be paid out of Escrow:

| | |
|---|---|
| Item 2: General and special taxes and assessments for 2018-2019 | $16,085.94 |
| Item 3: Defaulted taxes for fiscal year 2015-2016 | $46,938.78 |
| Items 9, 10, 12, 13, 15-23 for Los Angeles County property taxes | $9,900.39 |

Administrative costs related to this Sale will be paid from the net proceeds from the Sale ("Net Proceeds") and after costs of Sale, the Trustee believes that there will be sufficient sums from the Net Proceeds to pay the Property Taxes.

**III. TERMS OF PROPOSED SALE**

Through Escrow the Buyers were provided with a copy of the title policy, and the title inspection contingency has been removed by the Buyers. In order to maximize value to the Estate, the Trustee seeks to sell the Property to Buyers free and clear of liens, interests, claims, and encumbrances, except specifically the Property Taxes, which shall be paid directly through Escrow from the Net Proceeds, and any and all other liens, interests, claims and encumbrances, if any, are to attach to the Net Proceeds, net after expenses of the Sale, pursuant to the terms and conditions as set forth herein and in the Purchase Agreement.

**A. Purchase Agreement**

The Purchase Agreement was fully executed as of March 2, 2019. The following is a summary of the terms of the Purchase Agreement. Interested parties should consult the Purchase Agreement, attached to the Seror Declaration as **Exhibit "A"**, for the full and complete terms and conditions of the proposed Sale of the Property. In the event the following summary of terms of Sale is found to conflict with the Purchase Agreement, the terms of the Purchase Agreement shall govern and be controlling.

1. Sale Price: The Trustee proposes to sell the Property to Buyers, subject to Court approval, for One Million Three Hundred Forty-Five Thousand Dollars ($1,345,000.00), payable upon close of escrow. Financing is not a condition of sale.

2. Deposit: Buyer has deposited with Escrow a deposit in the amount of Forty Thousand Five Hundred Dollars ($40,500.00) ("Deposit").

3. Broker's Commission: Subject to Court approval, the Trustee as seller will pay to the Broker through Escrow real estate broker commissions totaling 6% of the Purchase Price ("Commission"). Broker and the Buyers' broker, Coldwell Banker, will share the Commission equally. The Trustee also will pay all other normal closing costs and costs of sale through escrow, including the cost of a standard title insurance policy, recording fees, documentary transfer taxes, and other normal and customary charges, pro-rations, costs and fees.

4. No Representations or Warranties: The Property will be sold by the Trustee on an "as-is," "where-is" and "with-all-faults" basis without any warranties, expressed or implied, and without any contingencies, without any representations or warranties by the Trustee regarding the condition of the Property. Transfer of the Property shall be by quitclaim deed.

5. Contingencies: As of the date of the filing of this Motion, any contingencies have been removed, and Buyers have funded the Deposit.

6. Liquidated Damages, Buyers' Default: If Buyers, after Bankruptcy Court approval of the Sale to Buyers, fail to complete the purchase contemplated by the Purchase Agreement, the Trustee shall retain the Deposit as liquidated damages without further legal action.

/ / /

7. Overbid: The proposed Sale to Buyers is subject to overbid. If the Court does not approve Buyers as purchasers of the Property, the Trustee and Buyers shall cancel escrow and Trustee shall authorize the Escrow Holder, as defined in the Purchase Agreement, to refund the Deposit to Buyers.

8. Close of Escrow: Escrow shall close as soon as practicable after entry of the order approving the Sale ("Sale Order"), but no later than the first business day after 14 calendar days following the entry of the Sale Order. The Closing shall occur on the date the quitclaim deed transferring the Property to Buyers is recorded with the Los Angeles County Recorder.

9. Bankruptcy Court Jurisdiction: The United Stated Bankruptcy Court for the Central District of California shall have exclusive jurisdiction to interpret and enforce the Purchase Agreement.

10. Tax Consequences: The Trustee expresses no opinion as to whether there are tax consequences to the Sale.

**B. Overbid Procedures**

While the Trustee is prepared to consummate the Sale of the Property to the Buyer pursuant to the terms of the Purchase Agreement, he is obliged to seek the maximum price for the Property. Accordingly, the Trustee requests that the Court authorize him to implement an overbid procedure regarding the sale of the Property per the following terms ("Bidding Procedures"):

1. Present at Hearing: The Buyers and each Qualified Bidder, defined below, must be physically present at the hearing on the Motion or represented by an individual or individuals with the authority to participate in the overbid process;

2. Notice of Overbid: Any party wishing to participate in the overbid process must notify the Trustee in writing directed to Trustee Seror via email addressed to dseror@bg.law **and** to Trustee's counsel (Richard Burstein, via email to rburstein@bg.law and Jorge A. Gaitan, via email to jgaitan@bg.law), of his/her/its intention to do so no later than close of business two calendar days before the hearing on the Motion and must provide evidence of his/her/its financial ability to close;

3. Overbidder's Deposit: To be a qualified overbidder ("Qualified Overbidder") each party participating in the overbid process (except for the Buyers, who have already paid the Deposit

to the Trustee), must remit to the Trustee, care of his counsel of record at the address set forth on the top left of the first page of this Motion, at or prior to the hearing on this Motion, payment in the form of a cashier's check only (no other form of payment shall be accepted) made payable to "David Seror, Chapter 7 Trustee" (payment made payable to any other party may be, in the sole discretion of the Trustee and/or Trustee's counsel, deemed inadequate and rejected) in the amount of Forty Thousand Five Hundred Dollars ($40,500.00) (the "Overbid Deposit"). The Overbid Deposit shall not be refundable if such party is the successful bidder and is thereafter unable to complete the purchase of the Property per the terms of the proposed sale with 15 calendar days after entry of an order approving this Motion;

4. Initial Overbid: The initial overbid for the Property shall be Fifty Thousand Dollars ($50,000.00), with subsequent overbids being made in minimum increments of Twenty Thousand Dollars ($20,000.00);

5. Successful Overbidder Subject to terms of Purchase Agreement: In the event that the Buyers are not the successful bidders for the Property, the successful bidder ("Successful Bidder") shall then become the buyer under the same terms and conditions as set forth in the Purchase Agreement, except in Purchase Price. Under these circumstances, the Purchase Agreement with Buyers would no longer be effective and Buyers would be entitled to full refund of the Deposit.

## IV. PROPOSED DISTRIBUTION OF SALE PROCEEDS

The Motion seeks authority to sell the Property free and clear of all liens and encumbrances, except for undisputed Property Taxes which shall be paid from escrow. Thus, the Trustee seeks authorization for distribution of the Sale proceeds at the close of Escrow as follows:

(a) Normal closing costs including, but not limited to, the Trustee's share of escrow charges, the cost of standard coverage title insurance policy, recording fees, documentary transfer taxes, pro-rated real property taxes, and other normal and customary charges, pro-rations, costs, and fees;

(b) The Property Taxes; and

(c) Commission of 6% of the Purchase Price.

The following is a break-down of anticipated Sale figures:

/ / /

| | |
|---|---|
| **Purchase Price …** | **$1,345,000.00** |
| **Estimated Broker's Commissions (6%) …** | **$80,700** |
| **Estimated Closing Costs (1.5%) …** | **$20,175** |
| **Estimated Property Taxes …** | **$72,925.11** |
| **Net Proceeds** | **$1,171,199.89** |

Moreover, as shall be further explained in Section V.C. of the Motion, below, the Net Proceeds of the Sale will be held by the Trustee pending final adjudication by the Court of the Quiet Title Action. Specifically, the Title Report indicates that the Usmanovs have a purported lien encumbering the Property of Three Hundred Six Thousand Dollars ($306,000) (**Exhibit "D"**, Item No. 11), however, as indicated below, the amount of the Usmanovs' total claim is an issue in dispute. Nevertheless, the Trustee anticipates that if the Usmanovs' total claim against the Property can be eliminated or reduced via the Quiet Title Action, there is a significant likelihood that the Sale will ultimately provide a substantial benefit to the Estate's creditors. For these reasons, and as discussed below, the Trustee requests the Court grant the Motion and approve the proposed Sale.

## V. DISCUSSION

### A. Title to the Property is Fully Vested in the Debtor.

The Property is vested in the name of the Debtor as set forth in the Title Report. **Exhibit "D"**.

### B. The Court Should Authorize the Sale of the Assets in Accordance with the Purchase Agreement.

The Sale as contemplated in the Purchase Agreement is in the best interest of the Estate and should be approved. Section 363 of the Bankruptcy Code authorizes the Trustee to sell Estate property following notice and a hearing on terms that are fair and reasonable and the result of an arms-length transaction. Specifically, § 363(b)(1) states in pertinent part that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

In determining whether the sale of assets outside the ordinary course of business should be approved, bankruptcy courts usually consider several factors, including: (1) whether a sufficient business reason exists for the sale; and (2) whether the proposed sale is in the best interest of the

estate, which in turn consists of the following factors: (a) that terms of the sale are fair and reasonable; (b) that the proposed sale has been adequately marketed; (c) that the proposed sale terms have been properly negotiated and proposed in good faith; and (d) that the purchaser is involved in an arms-length transaction with the seller. *See*, *In re Wilde Horse Enterprises, Inc.* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991)

("In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, *i.e.*, it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, and that it is an 'arms-length' transaction."); *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335-356 (Bankr. D. Del 1987) (In determining whether a proposed sale of equipment is proper under § 363, court should consider whether the proposed sale is fair and equitable, whether there was a good business reason for completing the sale, and whether the transaction is proposed in good faith.); *In re Alves*, 52 B.R. 353, 355 (Bankr. D.R.I. 1985) (whether to approve a sale under § 363 depends upon the integrity of sale and the best interest of bankruptcy estate).

Here, the Trustee has satisfied all of the applicable elements discussed above concerning the proposed sale of the Property, and the Trustee has sound reason for the Sale, specifically, to maximize the return to the Estate by liquidation of the Property. The Trustee submits that the Purchase Price for the Property offered by the Buyers is fair and reasonable and that the sale of the Property was marketed adequately. The Trustee believes that the Purchase Agreement, based on all the factors previously described, represents an amount that is well within the range of reasonableness and neither the Broker nor the Trustee believe that further marketing will result in any substantial incremental benefit to the Estate. *See*, Seror Decl.

As set forth in the Flores Decl., the Broker extensively listed and marketed the Property, which marketing efforts resulted in over 3,200 agent views of the Property on the MLS and 3,700 views on proprietary websites. The Buyer's offer was the best of three offers received on the Property. *See*, Flores Decl. Based on the Broker's testimony regarding the value of the Property, the Trustee is informed and believes that the Purchase Price is reasonable and fair. Thus, in the Trustee's business judgment, the proposed Sale to Buyers as contemplated by the Purchase

Agreement will maximize the benefit to the Estate, is fair and reasonable, and should be approved. *See*, Seror Decl.

**C. The Court Should Authorize the Proposed Sale Free and Clear of All Liens, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f)**

Pursuant 11 U.S.C. § 363(f), the Trustee may sell any and all right, title and interest he may possess in the Property free and clear of liens, interests, claims, and encumbrances, with such liens, interests, claims and encumbrances to attach to the Sale proceeds, with the same priority and right of enforcement as previously existed. The Trustee does not dispute the amount of the Property Taxes and related liens encumbering the Property as set forth in the Title Report. However, as indicated above, the Trustee does dispute the claim of the Usmanovs (the "Claim") as well as the claims of the other Defendants, and is currently in the midst of litigating the Quiet Title Action to determine the extent of their interests in the Property.

Section 363(f)(4) of the Bankruptcy Code permits a sale free and clear of an interest that is subject to a "bona fide dispute". 11 U.S.C. § 363(f)(4). "Bona fide dispute" is not defined in § 363(f)(4) or anywhere else in the Bankruptcy Code. *In re GGW Brands, LLC*, 2013 WL 6906375, at *24 (Bankr. C.D. Cal. Nov. 15, 2013)

. The term "bona fide dispute" is also found in 11 U.S.C. § 303, and the Ninth Circuit, in interpreting the phrase for purposes of that section, defines it as the existence of "an objective basis for either a factual or a legal dispute as to the validity of the debt." *Id*. (citing *In re Vortex Fishing Sys., Inc*., 277 F.3d 1057, 1064 (9th Cir.2002); *In re Nicole Energy Servs., Inc*., 385 B.R. 201, 229 (Bankr.S.D.Ohio 2008) (applying the same standard for purposes of § 363(f)(4)); *In re Taylor*, 198 B.R. 142, 162 (Bankr.D.S.C.1996) (noting that a "bona fide dispute" means "whether there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest" and that the Court is not required to "resolve the underlying dispute or determine the probable outcome of the dispute, but merely whether one exists")). Additionally, the Ninth Circuit has held that a dispute need not be directly between the debtor/trustee and the interest-holder. *In re Gerwer*, 898 F.2d 730, 733 (9th Cir. 1990) (Holding that if the outcome of the dispute over the interest will affect the value of the estate the statutory language is sufficient to embrace the interest).

There is a bona fide dispute between the Trustee and all Defendants as to the validity and extent of their Claims. As indicated, above, the claims of the majority of Defendants have either been resolved by stipulated judgment or the Defendants have defaulted and the Trustee will seek entry of default judgment as to such defaulting Defendants. As to the remaining disputed claim of the Usmanovs, among other legal and factual disputes detailed in the FAC, a dispute exists regarding the following allegations:

1. Usmanov claims to hold a secured interest in the Providencia Property that was superior in priority to the secured lien granted to Debtor (Compl. at ¶83); and
2. Defendant Usmanov has also attempted to add the secured liens granted to other lienholders against the Providencia Property onto the amount secured by the lien he was assigned, if any, by the Kellzi Trust such that Usmanov claims to have a lien equal to most of if not all of the equity available in the Providencia Property (*Id*. at ¶84).

Here, there is an objective basis for both a factual and legal dispute as to the validity of the Claim, which dispute falls squarely within the confines of § 363(f)(4). At a minimum, if the Trustee prevails in disputing and reducing the amount of the Usmanovs' Claim, the Estate's creditors will benefit from the net proceeds available for distribution. Based on the foregoing, the Claim of the Usmanovs and all claims of the remaining defaulting Defendants should be treated as disputed and attach to the net proceeds of sale pending adjudication by the Bankruptcy Court of the Trustee's claims raised in the Quiet Title Action.

The Trustee respectfully submits that he may quitclaim whatever rights and title the Estate has in the Property to Buyers, subject to overbid and Court approval, free and clear of all encumbrances of record, except those being paid through escrow, as herein provided.

**D. The Court Should Find the Buyers are Good Faith Purchasers**

Pursuant to 11 U.S.C. § 363(m), the Court should make a finding that the Buyers are good faith purchasers. Although the Bankruptcy Code does not define "good faith," courts have provided guidance as to the appropriate factors to consider. *See, In re Pine Coast Enterprises, Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992)("The requirements that a purchaser act in good faith speaks to the

integrity of its conduct in the course of the sale proceeding."); *Kham and Nate's Shoes No.2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) (The purpose of § 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith). *In T.C. Investors, et al. v. Joseph, et al. (In re M Capital Corp.)*, 290 B.R. 743 (9th Cir. BAP 2003), the Bankruptcy Appellate Panel held that a bankruptcy court may not make a finding of good faith in the absence of evidence, but may make such a finding if appropriate evidence is presented. 290 B.R at 746-747.

Here, the Trustee requests that the Court make a finding that the Buyers are good faith purchasers within the meaning of § 363(m). The Trustee has no relation to the Buyers and did not know the Buyers prior to their involvement in this Bankruptcy Case. Additionally, the Trustee submits that the Purchase Agreement was negotiated at arms-length, and the proposed Purchase Price is fair consideration for the Property. *See,* Seror Decl. As such, a finding of good faith within the meaning of § 363(m) is appropriate.

**E. The Court Should Approve the Bidding Procedures**

The Bidding Procedures ensure that the Estate receives the maximum benefit of the Sale, and the Trustee submits that sufficient cause exists to approve these Bidding Procedures. Courts routinely have held that when the sale of substantial assets bankruptcy is done on a competitive bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to submit bids that exceed an existing bid by a specified amount. *See, e.g. In re Financial News Network, Inc.*, 931 F.2d 217 (2d Cir. 1991) (authorizing overbids that exceeded the initial offer by 9.5%). Here, the initial overbid exceeds the Purchase Price by $50,000 (or approximately 3.5%), with further overbids to be in increments of $20,000.00. The Trustee feels these amounts are appropriate and designed to ensure serious overbids, if there are any. The Trustee has proposed that any Qualified Overbidder submit the Overbid Deposit amount to him pending the outcome of the hearing. Buyers have expended, and will continue to expend, considerable time, money and energy pursuing the Purchase Agreement and contemplated Sale, and have engaged in good faith negotiations with the Trustee. Thus, the proposed Bidding Procedures are appropriate and should be approved.

**VI. NOTICE**

The Trustee submits that adequate notice of the proposed Sale has been given. Concurrently with the filing of this Motion, notice on the Court- approved form F 6004-2 was submitted to the Court's clerk for publication on the Court's website pursuant to Local Bankruptcy Rule 6004-1(f). Notice will also be published on the Danning, Gill, Diamond & Kollitz LLP ("DGDK") website. Finally, notice of this Motion has been provided to the Debtor, the Office of the United States Trustee, all creditors, and all other interested parties, including the Usmanovs, pursuant to Federal Rules of Bankruptcy Procedure 2002(a).

**VII. CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Court enter an order granting the Motion and:

(1) Approving the terms of the Purchase Agreement, and finding that the terms of the Purchase Agreement are fair and reasonable and that the Sale of the Property pursuant to the terms of the Purchase Agreement is in the best interest of the Estate and its creditors;

(2) Authorizing the sale of the Property to Buyers or the Successful Bidder free and clear of all liens, claims, interests, and encumbrances, with such liens, claims, interests, and encumbrances to attach to the sale proceeds, net of expenses of sale, with the same priority and rights of enforcement as previously existed pursuant to 11 U.S.C. § 363(b) and (f);

(3) Authorizing the Trustee to execute any and all documents that may be necessary or convenient to consummate the Sale;

(4) Authorizing the sale of the Property to Buyer or the Successful Bidder on the terms and conditions set forth herein, on an "as-is," "where-is" and "with-all-faults" basis without any warranties, expressed or implied, and without any contingencies, without any representations or warranties by the Trustee;

(5) Authorizing the payment through escrow of the Commission, escrow fees, *pro-rated* Property Taxes, and other normal and customary costs associated with the sale of real property;

(6) Authorizing the payment through escrow of the encumbrances of record specifically identified in the Title Report as relating to past due and/or delinquent taxes regarding the Property;

(7) Treating as disputed the claims of Defendants, with such disputed claims to attach to the net proceeds of sale for later resolution in connection with the Quiet Title Action;

(7) Approving the proposed Bidding Procedures for the Sale of the Property;

(8) Finding that the Buyers or the Successful Bidder is/are a good faith purchaser of the Property pursuant to 11 U.S.C. § 363(m), entitled to all benefits and protections provided thereby;

(9) Approving the form and manner of notice provided by the Trustee;

(10) Waiving the fourteen (14) days stay provided by Federal Rules of Bankruptcy Procedure 6004(h); and

(11) Granting such other and further relief to the Trustee as the Court deems just and proper under the circumstances.

Dated: May 15, 2019

BRUTZKUS GUBNER

By: /s/ Jorge A. Gaitan
Richard D. Burstein
Jorge A. Gaitan
Attorneys for David Seror, Chapter 7 Trustee

**DECLARATION OF DAVID SEROR**

I, David Seror, declare:

1. I am the Chapter 7 trustee duly appointed for the bankruptcy estate of debtor, Alliance Funding Group, Inc. ("Debtor"), in this matter. I have personal knowledge of the facts stated herein and if called to testify as a witness, I could and would competently testify thereto.

2. I make this declaration in support of the foregoing Motion. Any capitalized term not defined herein shall have the same meaning ascribed to it in the Motion.

3. The Broker determined that the listing price for the Property should be One Million Two Hundred Ninety Five Thousand Dollars ($1,295,000.00), and on or about February 20, 2019, I executed the Listing Agreement with Coldwell Banker for the sale and marketing of the Property. A true and correct copy of the Listing Agreement is attached hereto as **Exhibit "C"** and incorporated herein by this reference. On February 25, 2019, I filed an application to approve employment of the Broker to market and sell the Property [Doc. 61], and on March 26, 2019, the Court entered its order approving the Broker's employment herein [Doc. 64]. The Broker began marketing efforts for the Property after it the listing agreement was executed and has continued to market the Property, and will continue to do so up until the date set for the hearing on the Sale and auction.

4. According to the Title Report obtained in connection with the proposed Sale, title to the Property is held solely by the Debtor. A true and correct copy of the Title Report is attached hereto as **Exhibit "D"** and incorporated herein by this reference.

5. I understand that the Broker listed the Property for sale on the MLS and am further informed and believe that the Broker marketed the Property by contacting multiple brokers and scheduling showings, including holding two open houses. I further understand that Broker also listed the Property on the MLS and promoted the Property on the proprietary websites Zillow.com, Redfin.com, Realty.com and ColdwellBanker.com. I understand that the foregoing marketing efforts resulted in over 3,200 agent views of the Property on the MLS and 3,700 views on the proprietary websites (not including Redfin.com). Ultimately, three offers were received from interested buyers of the Property.

6. On or about March 1, 2019, I sent Buyers my standard form Counter-Offer, which includes standard bankruptcy-related provisions and terms, included but not limited to the necessity of Bankruptcy Court approval. I am informed and believe that Buyers executed the Counter-Offer on or about March 2, 2019, and my affirmation thereof was executed on or about March 6, 2019. On or about March 29, 2019, the Buyers and I executed Amended Escrow Instructions by which it was agreed that the original purchase price of $1,350,000.00 would be reduced to $1,345,000.00 to address Buyers' concerns regarding the condition of the Property. Together, these documents constitute the Purchase Agreement, true and correct copies of the Counter-Offer and Amended Escrow Instructions are attached hereto as **Exhibit "A"** and incorporated herein by this reference. Ultimately, I determined in my business judgment that a sale price of $1,345,000 was the best and highest offer and therefore in the best interest of the Estate.

7. Based on the foregoing, I request that the Court approve the terms of the sale as those terms are set forth in full in the Motion. As indicated in the Motion, I do not dispute the Property Taxes, which will be paid from the Sale Proceeds through Escrow. Regarding the disputed claims of the Defendants to the Quiet Title Action, I am requesting that the Court grant the motion, approving the Sale free and clear of the Defendants' interests, with such claims by Defendants attaching to the net sale proceeds, for later resolution in connection with the Quiet Title Action. As stated herein, I seek authority to sell the Property free and clear of liens, interests, claims, and encumbrances, with such liens, interests, claims, and encumbrances to attach to the Sale proceeds, net of expenses of sale, with the same priority and rights of enforcement as previously existed so that should disputes later arise on liens, escrow can still close.

8. I further request the authority to pay the brokers through Escrow the real estate broker Commission totaling six percent of the Purchase Price. Broker and the Buyers' broker will share the Commission. I also seek authority to pay the normal closing costs and costs of sale through escrow, including the costs of a standard coverage title insurance policy, taxes, recording fees, documentary transfer taxes, and other normal and customary charges, pro-rations, costs, fees, as well as any past due and delinquent taxes that are reflected on the Title Report as encumbrances against the Property.

9. After payment of approved amounts as set forth herein, the balance of the Sale proceeds will be held for the benefit of the Estate.

10. I am informed and believe that Escrow has received the Deposit in in the amount of $40,500 from the Buyer.

11. I am informed by Broker and believe that Buyers have removed all contingencies to the Sale of the Property.

12. I have no relation to the Buyers and I did not know the Buyers prior to their involvement in this Bankruptcy Case. The Purchase Agreement was negotiated at arms-length, and I believe the proposed Purchase Price is fair consideration for the Property. Based on the foregoing, I request that the Motion be approved as in the best interest of the Estate and that the Buyers be provided with the protections of 11 U.S.C. § 363(m).

13. I am also requesting that the Court approve the proposed Overbid Procedures. The initial overbid for the Property shall be Fifty Thousand Dollars ($50,000.00), with subsequent overbids being made in minimum increments of Twenty Thousand Dollars ($20,000.00). Given the value of the Property and the Purchase Price, I believe that these overbid increments are appropriate to encourage a vigorous overbid process, but are also in line with consideration of the fact that Buyers have expended, and will continue to expend, considerable time, money and energy pursuing the Purchase Agreement and contemplated Sale. I propose that any Qualified Overbidder submit the Overbid Deposit amount to me pending the outcome of the hearing. Thus, the proposed Bidding Procedures are appropriate and should be approved.

14. I am informed and believe that adequate notice on the proposed Sale will be given. Concurrently with the filing of the Motion, notice on the Court-approved form F6004-2 will be submitted to the Court's clerk for publication on the Court's website pursuant to Local Bankruptcy Rule 6004-1(f). Notice of the Sale will also be published on the DGDK website. Broker will update the listing of the Property on the MLS to include the date, time, and location of the hearing and Overbid Procedures. Finally, notice of this Motion has been provided to the Debtor, the Office of the United States Trustee, the other parties to have tendered offers as to the Property, to all identified on the Title Report, and all other interested parties pursuant to Federal Rules of Bankruptcy Procedure 2002(a).

15. Based on the above, and in my business judgment, I believe that the Purchase Price of $1,345,000.00 is a fair and reasonable price for the Property, and that the Motion should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of May, 2019 at Woodland Hills, California.

David Seror

**DECLARATION OF STEVE FLORES**

I, Steve Flores, declare:

1. I am over the age of 18, am a licensed real estate broker with Coldwell Banker, and have been in the real estate business for over 18 years. I have personal knowledge of the facts stated herein and if called to testify as a witness, I could and would competently testify thereto.

2. This declaration is made in support of the foregoing Motion. Any capitalized term not defined herein shall have the same meaning ascribed to it in the Motion.

3. I have had experience in the sale of commercial and residential properties through bankruptcy proceedings, and I am familiar with the bankruptcy sale process as well as the overbid auction process.

4. I determined that the listing price of the Property should be One Million Two Hundred Ninety Five Thousand Dollars ($1,295,00.00) and entered into the Listing Agreement (**Exhibit "C"**) with the Trustee on behalf of Coldwell Banker in this Bankruptcy Case as the Trustee's broker to market the Property for sale.

5. I entered the Property on the MLS on February 20, 2019, and on Zillow.com, Realtor.com, Redfin.com, and ColdwellBanker.com proprietary websites.

6. My office held a public open house on February 24, 2019, where approximately 40 interested buyers attended; and held a broker's open house on February 27, 2019.

7. The Property received over 3,200 agent views on the MLS and approximately 3,700 views on proprietary websites, not including Redfin.com.

8. I received three offers regarding the Property, including the offer of the Buyers. All three offers were in the $1.3 million dollar range. The Trustee has elected to proceed with the Buyers.

9. In addition to the Buyers, we received offers from Diana Martirosyan, represented by I-Home Realty; and Viswanadha Kodavati and Ramadevi Kodavati, represented by Keller Williams.

/ / /

/ / /

/ / /

/ / /

10. I will update the listing of the Property on the MLS to include the date, time, and location of the hearing and Overbid terms and Procedures.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 14th day of May, 2019 at Santa Monica, California.

Steve Flores